JOHN R. COCHRAN et al. Appellants, vs. ROBERT R. BAILEY, Appellee.

Opinion filed December 22, 1915.

1. REAL PROPERTY—*restrictions on the use of property owned in fee are not favored.* If the intention of the parties to a deed to create a restriction is clearly manifest it will be enforced by a court of equity; but restrictions on the use of property owned in fee simple are not favored, and doubts will, in general, be resolved against them.

2. SAME—*restrictions upon use of property will not be enlarged by construction.* A fee simple title implies the right of user, and restrictions upon the use imposed by contract will not be enlarged or extended by construction.

3. SAME—*what restriction does not prohibit erection of bungalow on rear of lots.* An instrument executed by the owner of all the lots in a block fronting on a certain street, which declares it to be the purpose of the owner to establish the status of such lots as high-class residence property but which contains but one specific restriction in the use of the property, namely, the establishment of a building line in the front part of the lots, cannot, by implication, be construed to prohibit the purchaser of two of the lots from erecting a bungalow on the rear of the lots, even though the effect may be to depreciate the value of high-class homes on other lots.

4. SAME—*owner of lots has the right to re-subdivide them as he pleases.* The owner of lots has the right, in erecting buildings thereon, to re-subdivide them as he pleases, in the absence of any specific and binding restriction to the contrary.

APPEAL from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding.

ZANE, MORSE & MCKINNEY, and KNAPP & CAMPBELL, (JOHN R. COCHRAN, *pro se* and of counsel,) for appellants.

WALTER S. HOLDEN, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The circuit court of Cook county sustained the demurrer of the appellee, Robert R. Bailey, to the amended bill in equity filed by the appellants, John R. Cochran and Isola

271 — 10

Belle Cochran, his wife, to enjoin the appellee from erecting a bungalow on the rear of lots 1 and 2 in block 13, fronting on Eighth street, in the village of Wilmette, and dismissed the bill for want of equity.

The facts alleged in the amended bill and admitted by the demurrer are as follows: In 1872 Greenleaf and Morse were the owners of block 13 and other blocks in the village of Wilmette and caused a plat of their subdivision of the same to be made and filed for record. Block 13 is bounded on the north by Linden avenue, on the east by Eighth street, on the south by Oakwood avenue and on the west by Ninth street. There is a tier of lots on the north side fronting on Linden avenue and a tier on the south side fronting on Oakwood avenue, and between these two tiers of lots there are lots fronting on Eighth and Ninth streets. The block consists of twenty-six lots, and lots 1 to 9, inclusive, front on Linden avenue, each having a frontage of 50 feet on the avenue and a depth of 190 feet to an alley 20 feet wide at the rear. Lots 18 to 26 front on Oakwood avenue, with a like frontage and depth to an alley of the same width in the rear. Between the two alleys, lots 14 to 17 front on Eighth street and lots 10 to 13 front on Ninth street, each with a frontage of 50 feet and a depth of 210 feet to an alley 30 feet wide connecting with the other alleys. On October 30, 1907, Northwestern University was the owner of lots 1 to 9, and on that day executed the following instrument in writing:

"Whereas, Northwestern University, a corporation organized under the laws of the State of Illinois, is the owner of lots 1 to 9, inclusive, in block 13, in Greenleaf & Morse's subdivision of blocks 12, 13, 15, 16, 19 and 21, in the village of Wilmette, in Cook county, Illinois, being all of the lots fronting north on Linden avenue between Eighth and Ninth streets, in said village, and is desirous of establishing the status of said lots as high-class residence property; now, therefore, by this instrument said Northwestern University does hereby establish and declare that no building shall be constructed on said premises, or any part thereof, the north wall of which shall extend beyond and north of a line drawn

40 feet south from and parallel with the south line of said Linden avenue, save that ordinary bay windows, porches and steps appurtenant to any house, the north wall of which shall be located south of said line, shall be permitted to extend north of such line. The above restriction shall continue until the owners of all of the above described lots shall by written instrument abrogate or modify it."

The instrument was filed for record on November 4, 1907, and when it was made the entire village was subdivided, and the lots, except in the business portion, were not less than 50 feet in width. The property, generally, in the village was high-class residence property and has since rapidly increased in value and desirability as such. The complainants are owners of lot 3 by virtue of a warranty deed from Northwestern University made on December 17, 1909, and have erected thereon a modern high-class nine-room residence, which is occupied by them, with their children, as a home. All of the lots fronting on Linden avenue have been sold, and the owners have not abrogated or modified the restriction contained in the instrument of October 30, 1907. The owners of lots 4, 5, 6 and 7 have also improved the same with modern high-class residences, and they and the complainants have strictly conformed to the provisions of the instrument imposing the restriction of the building line and have erected on each a single dwelling house. The space in the rear of the residences forms a large rectangle, on which are growing large and beautiful trees of great age, and each of the residences has a sun-parlor or glazed porch on the south side, affording a view of the rectangular space and a view to the east and west across the rear end of the lots. On March 26, 1915, the defendant became the owner of lots 1 and 2 for a consideration of $6000 paid by him, and afterward began the erection across the rear end of said lots of a one-story residence of the bungalow type, fronting on Eighth street, 35 feet west of the street line, 10 feet north of the alley and occupying a space of 41½ feet by 42½ feet, the west side of the porch at the rear being 11½ feet east of the

east line of complainants' property. The complainants filed
their original bill to enjoin the erection of the bungalow,
and afterward the defendant began the erection of a dwell-
ing house on lot 1 and another on lot 2, fronting on Lin-
den avenue. That fact was alleged in the amended bill but
no objection was made that the defendant was not con-
forming to the building line. The only controversy was
about the erection of the bungalow fronting on Eighth
street. The erection of the bungalow will damage and de-
preciate in value the complainants' property.

The design of Northwestern University, as expressed in
the instrument executed by it, was to establish the status
of the lots fronting on Linden avenue as high-class resi-
dence property, and for that purpose it imposed the restric-
tion that no building should be erected nearer than 40 feet
from the south line of the avenue, with the exception of
ordinary bay windows, porches and steps. There has been
no violation of that restriction, and the question is whether
the instrument, by implication, created any other limitation
upon the use of the lots as residence property. In deter-
mining that question the settled rule is, that if the intention
of the parties to create a restriction is clearly manifest it
will be enforced in a court of equity, but restrictions on
the use of property owned in fee simple are not favored,
and doubts will be, in general, resolved against them. (*Eck-
hart* v. *Irons,* 128 Ill. 568; *Hutchinson* v. *Ulrich,* 145 id.
336; *Hays* v. *St. Paul M. E. Church,* 196 id. 633; *Cur-
tis* v. *Rubin,* 244 id. 88; *Hartman* v. *Wells,* 257 id. 167.)
A fee simple title implies an unlimited right of user, and
restrictions upon the use by contract will not be enlarged
or extended by construction. A case illustrating the appli-
cation of the rule is *Hutchinson* v. *Ulrich, supra.* In that
case the owners of lots were confined to the erection of a
single dwelling, only, on each lot or 50 feet, and the owner
of two lots commenced to erect on them a flat or apart-
ment building four stories high, with a partition on the

line between the buildings. The court quoted from *Eckhart v. Irons, supra,* the rule that public policy was contrary to the hampering of real estate with restrictions and prohibitions as to its use, and hence, in the construction of deeds containing restrictions and prohibitions as to the use of property, all doubts should, as a general rule, be resolved against the same. The court held that while nothing but dwelling houses could be erected, the restriction did not prohibit the erection of a flat. It was considered that if the parties intended to prohibit the erection of a flat, or that a dwelling house should be used only for the private use of one family, they should have said so. When Northwestern University executed the instrument in question there were many things that would affect the lots as high-class residence property, such as the erection of buildings of a less value than some specified sum, or of a certain height or dimensions, or of flat or apartment buildings. The erection of a cottage of little value and no pretension to artistic style, or of a bungalow, or of a flat or apartment house covering the entire lot south of the building line, would seriously affect the value of the other residences as high-class residence property. One can readily appreciate the annoyance, irritation and disappointment resulting from the erection of either of the buildings specified, resulting in injury to the other residence property, but the general expression of the intention to preserve property as high-class residence property would not prevent the erection of such buildings. Northwestern University specified in the instrument the only particular by which its expressed design to establish the status of the lots as high-class residence property was to be effected. The erection of a bungalow is a legitimate use of property for residence purposes, and while the result in this case is admitted to be a damage to the complainants' property, the defendant was in the exercise of a right pertaining to the ownership of property which has not been taken from him.

It is argued that the erection of this bungalow fronting on Eighth street amounts to a vacation of that part of the plat, to the injury and damage of other proprietors. But manifestly that is not true. The most that can be said is, that if it should be conveyed it would have the same effect as a re-subdivision of lots 1 and 2. But if that is so, the owner has a right to make such a re-subdivision as he may choose. Universal practice, the recognized rights of owners, and the statute, permit such a re-subdivision.

The decree is affirmed.

*Decree affirmed.*